

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-6-2008

# USA v. Jones

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3683

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Jones" (2008). *2008 Decisions.* Paper 255.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/255

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3683
_____

UNITED STATES OF AMERICA

v.

AIMEE JONES,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 07-cr-00185)
District Judge:  Honorable Alan N. Bloch
_____

Submitted Under Third Circuit LAR 34.1(a)
October 3, 2008

Before:  FISHER, CHAGARES and HARDIMAN, *Circuit Judges.*

(Filed: November 6, 2008)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Aimee Jones was charged by information with one count of theft or embezzlement

in connection with health care, in violation of 18 U.S.C. § 669.  After the District Court

denied Jones's motion to dismiss the information, she entered a conditional guilty plea,

preserving the right to appeal the District Court's denial of her motion. For the reasons that follow, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

On July 20, 2005, Aimee Jones was convicted by a jury of health care fraud, in violation of 18 U.S.C. § 1347(2), for stealing money from Progressive Medical Specialists, Inc. ("Progressive"), the owner of the Pittsburgh, Pennsylvania methadone clinic where Jones worked. The District Court sentenced Jones to twenty-four months of imprisonment and three years of supervised release, ordered restitution to Progressive in the amount of $240,076.33, and ordered forfeiture to the United States of $199,716.25 and a 2003 Honda motorcycle. Jones appealed and we reversed her conviction and vacated her sentence, holding that the government had not established the elements of a § 1347(2) violation. *United States v. Jones*, 471 F.3d 478, 483 (3d Cir. 2006).

On May 11, 2007, Jones was charged by information with theft or embezzlement in connection with health care, in violation of 18 U.S.C. § 669, which makes it illegal to knowingly and willfully embezzle or steal "any of the moneys . . . or other assets of a health care benefit program." Section 669 defines the term "health care benefit program" by reference to 18 U.S.C. § 24(b), which provides:

2

"[T]he term 'health care benefit program' means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, [including] any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract."

Jones moved to dismiss the information, arguing that Progressive was not a "health care benefit program" within the meaning of § 24(b). For purposes of Jones's motion, the parties stipulated that the "record" consisted of the evidence presented at her trial on the prior charges. And that evidence, Jones argued, was insufficient to establish that Progressive had accepted payments from any private or public plan or insurer; while the evidence arguably demonstrated that a Houston, Pennsylvania methadone clinic run by a company called "Progressive" accepted such payments, there was no evidence establishing that company to be the same "Progressive" that owned the Pittsburgh clinic where she formerly worked and from which she allegedly stole money.

The District Court denied Jones's motion, finding that the evidence, when viewed in the light most favorable to the government, would permit a reasonable juror to "conclude that Progressive was one business entity operating two offices and that it, therefore, received payments for medical services" from a plan. *United States v. Jones*, No. 07-185, 2007 WL 2464478, at *2 (W.D. Pa. Aug. 27, 2007). Accordingly, the District Court explained, "a reasonable juror could conclude that Progressive is a health care benefit program beyond a reasonable doubt." *Id.* at *1.

3

Pursuant to a written plea agreement, Jones entered a conditional guilty plea that preserved for appeal the District Court's ruling on her motion. The District Court sentenced Jones to 299 days time served (under her prior, vacated conviction) and 3 years of supervised release, and ordered her to pay $75,000 in restitution and a special assessment of $100. This timely appeal followed.

II.

The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's legal conclusions in declining to dismiss an information or indictment. *See United States v. Scott*, 223 F.3d 208, 210 (3d Cir. 2000); *see also United States v. Whited*, 311 F.3d 259, 262 (3d Cir. 2002); *Virgin Islands v. Moolenaar*, 133 F.3d 246, 247 (3d Cir. 1998).

A district court may grant a pretrial motion to dismiss an indictment if the indictment's allegations do not suffice to charge an offense. *See United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000); *cf. Whited*, 311 F.3d at 262 ("We consider an indictment sufficient if, when considered in its entirety, it adequately informs the defendant of the charges against her such that she may prepare a defense and invoke the double jeopardy clause where appropriate."). And, ordinarily, the court may not predicate such a dismissal upon the insufficiency of the evidence to prove the indictment's charges. *See DeLaurentis*, 230 F.3d at 660. But in the rare case where, as here, there is a stipulated record, a pretrial motion to dismiss an indictment may be a

4

permissible vehicle for addressing the sufficiency of the government's evidence. *Id.* In reviewing such a challenge to the sufficiency of the evidence, whether in the context of a motion to dismiss an indictment or otherwise, we must view the evidence in the record in the light most favorable to the government to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *See*, *e.g.*, *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (reversing judgment of acquittal for insufficient evidence under Federal Rule of Criminal Procedure 29(c)).

III.

On appeal, Jones renews her argument that the government has failed to meet its burden to establish that Progressive was a "health care benefit program" within the meaning of 18 U.S.C. § 24(b). Jones insists that the evidence in the stipulated record is insufficient to establish that the "Progressive" that owned the Pittsburgh clinic, which did not accept payments from any insurance plan, also owned the clinic in Houston that did accept such payments. In the absence of proof that both clinics were part of the same company, Jones contends, the information should have been dismissed.

We disagree. Our review of the stipulated record confirms the District Court's conclusion that "the record is full of testimony that supports a reasonable inference that the Houston office and [the Pittsburgh] office were part of one business entity" and contains no evidence to the contrary. *Jones*, 2007 WL 2464478, at *3. As the District Court noted, the evidence in the stipulated record contains a large number of references to

5

the "Washington office," the "Houston, Pa, site" or the "other location," and every such reference "was in relation to [the Houston office] being another office of Progressive."

*Id.* For example,

> "Annamarie Roberto testified that she was the Project Director for both offices and that methadone was purchased from a distributor in Ohio for both offices. Despite Defendant's argument to the contrary, the record makes it clear that supervisory personnel routinely worked at both offices. Indeed, Dana Stack, a front office supervisor at the [Pittsburgh] office, testified that she worked at the Houston office half the time. Jodi Roberto, a front office supervisor at the Houston office, not only testified that she had spent a total of a month or two working at the [Pittsburgh] office over the past 4-5 years, she was also involved in investigating Defendant's alleged theft at the [Pittsburgh office] by helping review records there."

*Id.*

Viewing the evidence in the light most favorable to the government, we conclude that a rational trier of fact could find beyond a reasonable doubt that both the Pittsburgh clinic and the Houston clinic were owned by the same "Progressive" and, accordingly, that the company was a "health care benefit program" within the meaning of 18 U.S.C. § 24(b).

IV.

For the foregoing reasons, we will affirm the order of the District Court.